## HARDEN v. GARRETT, et al.

### Case No. 84-3311

Second Judicial Circuit, Leon County

July 17, 1985

### APPEARANCES OF COUNSEL

**Stephen Marc Slepin** for petitioner.

**John H. French, Jr.,** for respondent.

**James E. Moore** for respondent.

### OPINION OF THE COURT

CHARLES E. MINER, JR., Circuit Judge.

James D. Ward, the incumbent, defeated petitioner Robert Harden in the November 6, 1984 general election for the office of State Representative, District 5, by 39 votes out of more than 33,000 votes cast. Three days later, pursuant to Sec. 102.166(2), F.S., Harden filed a protest of election returns in the Circuit Court in and for Okaloosa County. On November 14, 1984, Harden filed a complaint to contest the election pursuant to Sec. 102.168, F.S., again in the Circuit Court of Okaloosa County.

On November 16, 1984, Circuit Judge Jere Tolton heard the protest

and contest filed by Harden. At that hearing, counsel for James Ward appeared specially to contest jurisdiction in the Circuit Court to hear the matter and objecting to venue. After hearing argument on the Motion attacking Circuit Court jurisdiction, Judge Tolton took the jurisdictional issue under advisement and opted to take testimony relating to the allegations of the contest/protest so that an evidentiary record could be made pending his decision on the jurisdictional issue.

On November 19, 1984, Judge Tolton entered an Order and Judgment finding *inter alia*, that no fraud or intentional wrongdoing in the balloting process had been established, that the matter was properly before the circuit court as an election contest and, since the representative district involved covered portions of both Okaloosa and Walton Counties, venue was proper in Leon County pursuant to Sec. 102.1685, F.S. Rather than dismiss the complaint, he transferred the case to Leon County.

In the early morning of the following day, this Court heard Harden's motion to enjoin the Speaker of the House from administering the oath of office to Representative Ward and for other relief. Ward's counsel again urged dismissal of the complaint asserting the same jurisdictional issue raised previously before Judge Tolton. At the conclusion of the hearing, the Court declined to enjoin Ward's swearing in, but determined to permit the matter to go forward as an election contest under the provisions of Sec's. 102.168 and 102.1682, F.S.

A final hearing in the case was held on April 25, 1985 at which time counsel for Representative Ward once again argued for dismissal on constitutional grounds. However, being of the mind that final disposition of this case would not occur at the circuit court level and desiring that an evidentiary record be made to assist the appellate court(s) in the premises, the Court heard testimony, arguments and considered briefs thereafter submitted.

Having reflected on the foregoing and having engaged in independent research on the issues presented, the Court is now of the mind that permitting the cause to continue in the Circuit Court was improvident. More in-depth consideration suggests that it should have been dismissed on constitutional grounds at the outset. In denying Ward's motion to dismiss, both Judge Tolton and the undersigned were put off by the negative inference found in dictum in *McPherson v. Flynn*, 397 So.2d 665 (Fla. 1981), that Sec. 102.168, F.S., the elections contest statute, allows the use of the election contest mechanism in legislative races. For reasons that will be set out more fully hereafter, the Court now believes and holds as a matter of law, that the election contest

**9**

provisions of Sec's. 102.168 and 102.1682, F.S. have no application to and cannot be employed to contest legislative elections.

Article III of the State Constitution enumerates the powers of the legislative branch. Sec. 2 of that Article provides in pertinent part that "each house shall be the sole judge of the qualifications, elections, and returns of its members, . . .". Thus, it appears clear beyond peradventure that the people of this State have vested the Legislature with *exclusive jurisdiction* over issues of its members' right to hold legislative office. No other provision of the constitutional document even suggests that this exclusive power may be delegated to another branch of government. When presented with questions involving the qualifications or elections of members of the legislature, the Florida Supreme Court has consistently held that it lacks jurisdiction to adjudicate these matters. *State v. Junkin*, 1 So.2d 177 (Fla. 1941); *Opinion of the Justices*, 12 Fla. 651; *English v. Bryant*, 152 So.2d 167 (Fla. 1963). The most recent pronouncement of the Supreme Court in the premises is found in *McPherson v. Flynn*, 397 So.2d 665 (Fla. 1981). There, an unsuccessful candidate for a seat in the Florida House of Representatives challenged the right of the winning contestant to run for the office in the first instance because, it was asserted, he was unqualified by law. He did not challenge the winner's election or the returns from that election. Then Chief Justice Sundberg, writing for a unanimous Supreme Court, posed the question to be decided thusly:

whether the courts of this State have jurisdiction to inquire into a person's qualifications to hold office, when that person has already been duly elected and has taken office as State Representative?

In responding in the negative, the Supreme Court held that the "courts in this State are without jurisdiction to determine the right of one who has been elected to legislative office."

Although *McPherson* involved a challenge to one's *qualifications* to hold legislative office, it seems abundantly clear in a constitutional sense that if the elections contest mechanism prescribed in Sec's. 102.168 and 102.1682 cannot be invoked to challenge "qualifications", perforce it cannot be used to challenge "elections" and "returns", notwithstanding that "elections" and "returns" necessarily involves the balloting and counting process.

Contestant Harden seizes upon dictum contained in *McPherson* as support for his assertion that the courts have authority to decide contested legislative elections. Particularly, he finds comfort in the following general observations:

The statutory election contest has been interpreted as referring only

**10**

to consideration of the balloting and counting process. *State ex rel. Peacock v. Latham*, 125 Fla. 69, 169 So. 597 (1936); *Farmer v. Carson*, 110 Fla. 245, 148 So. 557 (1933). The balloting process is distinct from the legal qualifications of the candidates, and we can find no authority for extending an election contest to areas outside the balloting process.

Although this language might initially suggest a negative inference that the courts have authority to decide elections contests involving the balloting process, nowhere does Justice Sundberg suggest that the courts have any authority to decide contests for legislative office. Indeed, Sec. 2 of Article III of the Florida Constitution is pellucidly clear that each House of the Florida Legislature is the "sole" judge of the "qualifications", "elections" and "returns" of its members. Even so, a brief review of the evolution of this mandate provides what the Court finds to be strong and conclusive guidance as to the unmistakable intent of the framers of this Constitutional Article.

What is now Article III, Sec. 2 finds its genesis in Article IV, Sec. 7 of the Constitution of 1838, which read in relevant part

. . . each House shall be the judge of the qualifications, elections and returns of its members; but a contested election, shall be determined in such manner, as shall be directed by law.

Otherwise stated, the framers of the original Constitution clearly authorized the legislature to delegate legislative elections contests to other branches of government. This identical wording was carried forward in the Constitutions of 1861 and 1865, respectively.

The Constitution of 1868 omitted the authority of the legislature to delegate contests of elections of its members. Article IV, Sec. 6 thereof reads in pertinent part:

. . . each House shall judge the qualifications, elections, and returns of its own members. . .

This provision was carried forth *verbatim* as Article III, Sec. 6 of the Constitution of 1885.

In the 1968 revision of the Constitution of 1885, the Revision Commission added the word *sole* to Sec. 2 of Article III, which addition was the only substantive change to the 1885 provision.

The failure of the framers of the Constitution of 1868 to carry forward the phrase "but a contested election shall be determined in such manner as shall be directed by law" from the Constitution of 1865 can only be interpreted as a removal of the legislature's ability to so delegate as opposed to an inadvertent act or omission. Moreover,

11

the addition of the word "sole" by the framers of the 1968 revision can only be viewed as making absolute the principle of non-delegation embodied in the Constitutions of 1868 and 1885.

The Florida House of Representatives has effectuated the provisions of Article III, Sec. 2 in its operating Rules. Rule 5.5 of the Rules of the Florida House reads as follows:

5.5—Contested Seat.—In cases of contest for a seat in the House, notice setting forth the grounds of such contest shall be given by the contestant to the House within three calendar days after the House first convenes, and in such case the contest shall be determined by majority vote as speedily as reasonably possible.

This Rule was in effect at the time of the election at issue in this proceeding. It was ratified and readopted on November 20, 1984 in the form of House Resolution 1. Journal of the House of Representatives, November 20, 1984, p. 10. Thus has the Florida House of Representatives provided a means of contesting one's election to that body. Contestant Harden chose not to avail himself of this remedy but instead invoked the jurisdiction of the Court pursuant to the aforesaid statutes which, if interpreted in a manner consistent with his assertions, would be in this Court's view terminally inconsistent with Article III, Sec. 2, Article II, Sec. 3 and Article III, Sec. 15(d) of the Florida Constitution.

Mr. Harden asks this Court to oust Representative Ward from the Legislature pursuant to Sec. 102.1682 or, in the alternative, to set aside his election and order a new election. This Court is powerless to grant the relief he seeks even if it were so inclined. Such is not to say, however, that Mr. Harden does not have grounds to complain about the conduct of the election in question. He most assuredly does.

Uncontroverted evidence presented at final hearing established that the Ward-Harden race in Okaloosa County was fraught with manifest election law irregularities. In the home voting precinct of the candidates, one voting machine, upon which 198 persons cast their ballots, did not even contain the Ward-Harden race. Additionally, it was clearly established that a substantial number of voters were registered and free to vote in the wrong representative voting district, there was erroneous information distributed to the citizens by election officials and various and sundry other things occurred which were not consistent with the provisions of the election laws. In a word, this election was "botched", not because of any fault attributable to Mr. Ward, but because of inattention given to the election by elections officials. Whether these irregularities contributed to Mr. Harden's defeat is anyone's guess.

12

All may not be lost, however, to Mr. Harden. Even though he did not choose to avail himself of the contest mechanism contained in the aforesaid House Rule, perhaps encouraged by this Court's superficial reading of the *McPherson* dictum referred to above, Rule 15.2 of the same House Rules provides that by extraordinary majority vote any Rule of the House may be waived. Even yet, the Legislature may be persuaded to waive Rule 5.5 and entertain his challenge. He will never know unless he tries.

This Court observes that the Florida Legislature is comprised of men and women of both political persuasions who are fair, honest and honorable people, every bit as sensitive to and capable of righting wrongs if any there are as is this Court. While it is true that the fate of his challenge would rest in the hands of the "transient" majority as his counsel describes it and granted that the process may be fraught with political overtones because of the nature of that process, if he is to find judgment, it must come from the very people he seeks to join. Accordingly, because the Court has concluded that it is wholly without jurisdiction to grant any relief sought by Mr. Harden, and notwithstanding its earlier ruling that the matter should be permitted to proceed as a contested election for a seat in the Florida House of Representatives, it is

ORDERED and ADJUDGED that this matter be and the same is hereby dismissed, with prejudice.